No. 61,065

STATE OF KANSAS, *Appellant*, v. MILTON GUINN, *Appellee*.

(753 P.2d 1271)

Opinion filed April 29, 1988.

*Rachel C. Lipman*, assistant attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for the appellant.

*Kenneth F. Crockett*, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the State of Kansas on a question reserved, arising out of a ruling by the trial court during a criminal prosecution by the State against Milton Guinn, defendant. Only one issue is involved. It is stated in the State's brief as follows: Whether a "Financial and Statistical Report for Adult Care Homes," which we will refer to as a "Cost Report," is a *claim or demand* as contemplated by K.S.A. 21-3904.

The statute upon which prosecution was based reads as follows:

"21-3904. **Presenting a false claim.** Presenting a false claim is knowingly and with intent to defraud presenting a claim or demand which is false in whole or in part, to a public officer or body authorized to audit, allow or pay such claim.

"Presenting a false claim for fifty dollars ($50) or more is a Class E felony. Presenting a false claim for less than fifty dollars ($50) is a class A misdemeanor."

Milton Guinn was charged in Shawnee District Court with 26 felony counts. Count 1 of the third amended information charged Guinn with conspiracy to present false claims to the Kansas Department of Social and Rehabilitation Services (SRS). Guinn was found not guilty of the conspiracy charge by the jury, and the conspiracy charge is not before us. Counts 2 through 26 charged Guinn with presenting specific false claims to the SRS in violation of K.S.A. 21-3904. At the conclusion of the State's evidence,

and on motion for acquittal made by the defendant, the trial court found that the "Cost Reports" presented as "claims" by the State were not "claims" within the meaning of the statute and that the State had failed to present a prima facie case as to Counts 2 through 26. The court thereupon acquitted Guinn of those charges. The State appeals, contending that the "Cost Reports" were "claims" within the meaning of the statute.

The facts upon which this prosecution was based are lengthy and complicated; however, for the purpose of this appeal, we need not present all of the detail which evolved during the lengthy jury trial. The State of Kansas has undertaken, under extensive statutes and regulations, to reimburse the operators of nursing homes the necessary, proper, and reasonable costs of providing care for certain eligible persons. SRS computes the per diem cost of patient care which it will pay to each nursing home, based upon the financial data provided to the State by each nursing home. This data is supplied periodically to SRS by the nursing homes on a "Financial and Statistical Report for Adult Care Homes," commonly referred to as a "Cost Report." The statistical information varies from nursing home to nursing home, as do the resulting reimbursable per diem costs. When a nursing home is sold in an arms-length transaction to a person or corporation wholly unrelated to the former owner, new Cost Reports must be filed and the new owner may be entitled to draw a higher per diem rate than the former owner because of the larger investment the new owner has in the physical facility. Similarly, if the operator of a nursing home engages a third party, who is not related to the operator, to provide management services for the home the operator may be entitled to claim the amount of management fees as a basis for an increase in the per diem rate. If, however, the operator provides such services or if they are provided by a close relative of the operator, then management services may not form a basis for computing the per diem rate.

The "Cost Report" is the first step in the claim procedure. Standing alone, however, the cost report does not engender the payment of funds by SRS to the provider. It merely forms the statistical base upon which SRS computes the allowable daily rate for care by the particular facility. Each month, the nursing

home files with SRS a Form DFA 389A, the Adult Care Home Service Claim. That form enumerates all of the eligible persons who have been cared for in the home during the past month, and shows the number of days that care has been provided for each person. SRS then takes the total number of days during which care for eligible patients has been provided, multiplies that by the applicable per diem rate, and pays the amount so determined to the operator of the nursing home.

Count 2 of the third amended information charged that Guinn did unlawfully, feloniously, willfully, and knowingly, and with intent to defraud, present a claim to a body authorized to credit, allow, or pay it, the SRS, in the amount of $783,100 for Northview Manor, a/k/a McPherson Care Center of McPherson, which was false in part, in that he reported amounts as property costs as though the parties had engaged in an arms-length transaction when they had not, and reported a claim for reimbursement of management fees when the parties involved were related parties and not entitled to such reimbursement. Counts 3 through 26, in similar language, charged Guinn with filing various false claims for The Alma Manor of Alma, Belle-View Manor of Belleville, The Colonial Terrace of Independence, The Colonial Lodge of Independence, Ivy Manor Nursing Home of Wichita, Phillipsburg Nursing Center of Phillipsburg, Seneca Manor Nursing Home of Wichita, Special Care Development Center of Winfield, Special Care Development Center-Haven, United Christian Care Center of Wichita, and Wakeeney Manor of Wakeeney. The amounts which were alleged to be false in part varied from $403,417 to $1,517,800 and were submitted during the period from October 29, 1979, to November 28, 1982. At trial, the State offered and the court received in evidence the Cost Reports filed for the various nursing facilities; however, no Adult Care Home Service Claims were offered or received in evidence. Similarly, there was no evidence that the nursing homes had claimed or the state had paid excessive amounts for patient care. There was no evidence, for example, that the Northview Manor at McPherson had claimed and the state had paid $783,100 when only a part of that amount should have been claimed or paid.

Failure to file a Cost Report does not prevent the provider from being paid for care furnished; failure to file the Cost Report

only causes a reduction to the lowest rate paid for the level of care in which the provider participates. K.A.R. 30-10-13-A-3-c-(2) (1978) (revoked May 1, 1985). K.A.R. 30-10-12-C-1 (1978) (revoked May 1, 1985), however, provides that providers "will be paid, at least monthly, for routine services and supplies rendered to eligible beneficiaries provided that: 1. The agency [SRS] is billed on form DFA-389A (adult care home service claim)." Thus, failure to file an Adult Care Home Service Claim will prevent the provider from being paid; payment only follows when those claim forms are filed.

The State introduced evidence tending to show that Guinn and Melvin T. Crawford had undisclosed interests in the various nursing home operating corporations and management corporations, and that the increased property costs and management fees claimed by line items in the Cost Reports should not have been claimed and were false representations which were included in the Cost Reports to increase the base upon which per diem rates were calculated by SRS.

The principal case relied upon by the State is *State v. Ruud*, 259 N.W.2d 567 (Minn. 1977), *cert. denied* 435 U.S. 996 (1978). The Ruuds were convicted of filing false claims with the Minnesota counterpart of SRS. They had included some $40,000 of improper expenses in the cost report filed with Minnesota. The opinion in *Ruud* indicates that Minnesota made monthly payments to the Ruuds based upon the rate calculated by use of the false information contained the Cost Report. Whether a Cost Report is a "claim" was not directly addressed in *Ruud*. The opinion recites that, according to the State's evidence, the inclusion of $40,049.36 in expenses improperly claimed as patient care costs resulted in overpayment of $15,723.68. In the case at hand, we have no evidence that Forms DFA 389A, Adult Care Home Service Claims, were filed, or that any claim or payment, let alone any excessive claim or overpayment, was ever made based upon false information contained in the Cost Reports.

In *Evans v. United States*, 11 F.2d 37 (4th Cir. 1926), the Court of Appeals held that a claim is not limited to the demand alone; it also includes the statement of facts set forth in support of the claim. We have no quarrel with that statement; but the opinion

does not say that a statement of facts, absent a demand, constitutes a claim.

Other cases cited are distinguishable and not helpful. We agree that the statute does not require a showing that the claim was paid, or that the governmental entity actually paid money in reliance upon the claim. But under the regulations of SRS, the Cost Report is but a part of the claim process. It is the first step. The second step in the filing of an Adult Care Home Service Claim. The word "claim" has been variously defined in the context of its usage since the earliest Kansas cases. See *Irwin v. Paulett*, 1 Kan. 418, 426 (1863). As it is used in K.S.A. 21-3904, "claim" means a demand for something due or supposed to be due; a request for the payment of money. Here, the Cost Report, though false, was not a request for payment. By itself, it did not constitute a "claim" as that term is used in K.S.A. 21-3904.

We are not holding that no attempt was made to commit a crime, or that no crime was committed. We are not holding that the Cost Reports filed by and on behalf of the various nursing homes named above were lawful and proper. We are not holding that the filing of a spurious Cost Report, followed by the filing of an Adult Care Home Service claim for payment of money, is not the filing of a false claim. All we hold here is that a Cost Report, by and of itself, is not a "claim or demand" under the statute.

The appeal is denied.